Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL ESPECIAL**

| | | |
|---|---|---|
| Richard Cora<br><br>Recurrido<br><br>vs.<br><br>Amgen Manufacturing, Limited<br><br>Recurrente<br><br>Oficina del Procurador del Veterano<br><br>Agencia Recurrida | KLRA202400564<br>CONS.<br>KLRA202400585 | **REVISIÓN ADMINISTRATIVA** procedente de la Oficina del Procurador del Veterano<br><br>Querella Núm.: Q1-7-19-12-12-784<br><br>Sobre: Ley 203-2007, según enmendada, Art. 4 F (A), (1), (3) y (5) |

Panel integrado por su presidente, el Juez Rivera Colón, la Juez Lebrón Nieves y el Juez Rodríguez Flores.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de diciembre de 2024.

Comparece Amgen Manufacturing Limited (AML o parte recurrente) quien presenta recurso de Revisión Judicial en la cual solicita la revocación de la "Resolución" emitida el 29 de junio de 2023 por la Oficina del Procurador del Veterano (OPV o agencia recurrida).[1] Mediante dicha determinación, la OPV le impuso a AML una multa de $34,500.00 a favor del señor Richard Cora (Sr. Cora o parte recurrida) por: (1) no aplicar la preferencia como veterano, conforme dispone la Ley Núm. 203-2007, *infra,* cuando solicitó y fue entrevistado para una posición de empleo con AML en el 2015 y (2) por no cumplir con su obligación estatutaria de notificar a la OPV cada una de las 49 convocatorias de empleo de libre competencia que tenía disponibles en Puerto Rico y en los Estados Unidos. Por otro lado, mediante recurso de Revisión Judicial, el Sr. Cora solicita la revisión de la "Resolución" emitida

_____
[1] Notificada el 16 de agosto de 2024.

Número Identificador

SEN2024_____

el 29 de junio de 2023 por la OPV.[2]  Esto, debido a que, la agencia recurrida no le adjudicó los daños y perjuicios reclamados en la "Querella".

Examinados los recursos de revisión administrativa sometidos, la totalidad de los expedientes y el estado de derecho aplicable ante nuestra consideración, modificamos el dictamen recurrido y así modificado, se confirma, mediante los fundamentos que expondremos a continuación.

**I.**

El 26 de febrero de 2015, el señor Luis Francisco López Marrero (Sr. López Marrero), General Senior del área de "Supply Chain" de AML, y la señora Debbie Román, reclutadora en AML para aquel tiempo, entrevistaron al Sr. Cora para el puesto de "Manager Supply Chain".  En dicha ocasión, AML seleccionó a la señora Shiara Amaro Bermúdez (Sra. Amaro Bermúdez) para el puesto que la parte recurrida se entrevistó.  Así las cosas, el Sr. Cora continuó solicitando a diversas convocatorias de AML hasta el 2019.

Tras no conseguir ningún puesto, el 3 de febrero de 2016, el Sr. Cora presentó una reclamación contra AML ante el "Office of Federal Contract Compliance Programs" del Departamento del Trabajo de los Estados Unidos (OFCCP, por sus siglas en inglés). En esencia, la parte recurrida alegó que, AML se negó a emplearlo en múltiples puestos de trabajo por ser un veterano protegido bajo la ley federal "Vietnam era Veterans" Readjustment Assistant Act of 1974 (VEVRAA, por sus siglas en inglés), 38 USC 412.  El 28 de junio de 2017, dicha entidad determinó que no existía evidencia suficiente para concluir que AML había discriminado al Sr. Cora.

---

[2] Notificada el 16 de agosto de 2024.

El 10 de agosto de 2017, el Sr. Cora acudió a la OPV en busca de orientación planteando haber sido discriminado por AML en el proceso de reclutamiento. Al día siguiente, la OPV inició una investigación en cuanto a las alegaciones del Sr. Cora de que, a pesar de estar cualificado y tener amplia experiencia, no fue elegido para ninguna de las posiciones de trabajo para las cuales solicitó. Por su parte, la OPV al amparo del Reglamento para Regular la Investigación y Adjudicación de Querellas en la Oficina del Procurador del Veterano Puertorriqueño, Reglamento Núm. 5259 del 28 de junio de 1995, inició la etapa investigativa relacionada a las alegaciones del Sr. Cora.

En septiembre del 2017, tras el paso de los huracanes Irma y María, el trámite de la investigación se retrasó. El 2 de diciembre de 2019, sin la OPV haber concluido la etapa investigativa, el Sr. Cora presentó una "Querella" ante la agencia recurrida en la cual alegó violaciones a la Nueva Carta de Derechos del Veterano Puertorriqueño del Siglo XXI, Ley Núm. 203-2007, 29 LPRA sec. 735 *et seq.* En específico, violaciones al Art. 4 (F)(a)(1), (F)(a)(3) y (F)(a)(5) de la Ley Núm. 203-2007, 29 LPRA sec. 737. En la "Querella", la parte recurrida, alegó que, AML no cumplió con el Art. 4 (F)(a)(1), (F)(a)(3) y (F)(a)(5) de la Ley Núm. 203-2007, *supra,* debido a que: (1) no le dio preferencia para la posición de "Manager Supply Chain" para la cual solicitó y fue entrevistado el 26 de febrero de 2015, (2) no notificó a la OPV 49 convocatorias de empleo de libre competencia que tenía disponibles en Puerto Rico y en los Estados Unidos y (3) que en el proceso de reclutamiento no se le otorgó 10 puntos, establecidos estatutariamente, pues el proceso de entrevista equivalía a una prueba oral.

Por su parte, el 10 de enero de 2020, AML presentó su "Contestación a la Querella" negando haber cometido violaciones a la Ley Núm. 203-2007, *supra.* A su vez, arguyó que, la Sec. 2.7 (f)

del, Reglamento Núm. 5259, *supra,* provocaba que la "Querella" estuviese prescrita. Esto, debido a que, la misma se basaba en hechos ocurridos transcurrido el año antes de su presentación.

Tras varios incidentes procesales, el 24 de junio de 2022, el Oficial Examinador Marcos De La Villa (OE) celebró una vista del estado de los procedimientos en la OPV. El OE resolvió que, la única posición que sería objeto de adjudicación era la posición de "Manager Supply Chain", para la cual la parte recurrida solicitó en el 2015. Su decisión estuvo basada en que dicha posición fue la única para la cual el Sr. Cora se entrevistó.

Así las cosas, el 29 de agosto de 2022, las partes presentaron una "Moción Conjunta Sobre Estipulaciones de Hechos". En igual fecha, el OE emitió una "Resolución" aceptando el escrito y haciéndolo formar parte del expediente. Consecuentemente, el 31 de agosto de 2022, las partes presentaron una "Moción Conjunta Sobre Testigos y Documentos".[3] Ese mismo día, el OE emitió una "Resolución y Orden" en la cual consignó que, los asuntos que se atenderían en la vista adjudicativa era el proceso de entrevista y reclutamiento de la posición de "Manager Supply Chain" del año 2015 y la identidad y cantidad de las plazas solicitadas por el Sr. Cora a la parte recurrente, entre el 27 de enero de 2015 y el 22 de junio de 2018.

El 1 de septiembre de 2022, se celebró la vista adjudicativa, en la cual testificaron las siguientes personas: (1) el Sr. Cora; (2) la Sra. Román; (3) el Sr. López Marrero y (4) la señora Edda Josefina Colón Irizarry. Evaluados sus testimonios, el 12 de junio de 2023, el OE presentó el "Informe y Recomendación del Oficial Examinador" a la agencia recurrida.

---

[3] "Moción Conjunta sobre Testigos y Documentos de cada parte para Vista Administrativa de 1 de septiembre de 2022"

Así pues, el 29 de junio de 2023,[4] la OPV emitió una "Resolución" acogiendo en su totalidad el "Informe y Recomendación del Oficial Examinador", determinando así que, la parte recurrente violó el Art. 4 (F)(a)(1) y (F)(a)(5) de la Ley Núm. 203-2007, *supra.* Esto, debido a que, AML no le proveyó al Sr. Cora preferencia en el 2015 cuando solicitó y se entrevistó para el puesto de "Manager Supply Chain", pues la parte recurrida contaba con unas condiciones académicas y técnicas, y una experiencia superior a la de la persona que fue elegida para el puesto. A raíz de dicha violación, se le impuso a la parte recurrente una multa de $5,000.00. La OPV también le impuso a AML una multa de $500.00 por cada una de las 49 convocatorias de empleo de libre competencia que tenía disponible la parte recurrente en Puerto Rico y en los Estados Unidos entre el 27 de enero de 2015 y el 2 de febrero de 2016, que no publicó. Es así como la agencia recurrida le impuso una multa de un total de $24,500.00 al violar el Art. 4 (F)(a)(5) de la Ley Núm. 203-2007, *supra.* A su vez, a pesar de que la OPV no impuso una multa por violar el Art. 4 (F)(a)(e) de la Ley Núm. 203-2007, *supra,* concluyó que, las entrevistas son "pruebas o exámenes" al amparo de dicho estatuto.

Tras varios trámites procesales, el 5 de septiembre de 2024, AML presentó una "Solicitud de Reconsideración de Resolución". En igual fecha, el Sr. Cora también presentó una "Moción de Reconsideración" en cuanto a la misma "Resolución". Evaluada la posición de ambas partes, el 13 de septiembre de 2024, la OPV emitió y notificó una "Resolución" en la cual declaró No Ha Lugar las solicitudes de reconsideración de AML y del Sr. Cora.

---

[4] Notificada el 16 de agosto de 2024.

Insatisfecho con el aludido dictamen, el 11 de octubre de 2024, AML presentó ante este foro apelativo intermedio el recurso de revisión judicial KLRA202400564 alegando la comisión de los siguientes errores, a saber:

> *Primer Error: Erró la OPV como cuestión de derecho al no desestimar las reclamaciones de CORA que estaban prescritas.*
>
> *Segundo Error: Erró la OPV al concluir que "la preferencia" a favor de CORA en virtud de 29 L.P.R.A. § 737 (F)(1)(A) aplicaba en este caso.*
>
> *Tercer Error: Erró la OPV al imponer multas en contra de AML por alegadas violaciones a 29 L.P.R.A. § 737 (F)(1)(A) y (F)(1)(E) toda vez que carecía de autoridad legal para ello.*
>
> *Cuarto Error: Erró la OPV al concluir que las entrevistas de empleo son "pruebas o exámenes" al amparo de 29 L.P.R.A. § 737(F)(C)(1)*

Por su parte, el 15 de octubre de 2024, el Sr. Cora instó el recurso de revisión judicial KLRA202400585 en el que señaló el siguiente error:

> *Erró la OPV al no conceder partida alguna por daños reclamados, a pesar de haberse adjudicado la Querella en favor del veterano querellante y estado facultada dicha oficina por disposición de ley para así hacerlo y llamado a velar por los derechos y beneficios de los veteranos.*

En relación con el recurso KLRA202400564 presentado por AML, el 30 de octubre de 2024, el Sr. Cora formuló su "Alegato en Oposición a la Revisión Judicial".[5] Mientras que, referente al recurso KLRA202400585 presentado por el Sr. Cora, el 14 de noviembre de 2024, AML presentó su escrito en oposición.

Examinados los escritos presentados, conforme lo dispuesto en la Regla 80.1 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 80.1, este Tribunal *motu proprio* consolida los recursos KLRA202400564 y KLRA202400585 por ambos recurrir de la misma "Resolución", así como tratarse del mismo asunto y derecho aplicable.

---

[5] "Alegato en Oposición a la Revisión Judicial de la determinación administrativa de AMGEN"

Consideradas las comparecencias de las partes en sus respectivos recursos, damos por perfeccionado los mismos para su adjudicación y resolvemos.

**II.**

**A.**

En nuestro ordenamiento jurídico, las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 893 (2008). Lo anterior se fundamenta en el conocimiento especializado y la experiencia sobre la materia que su ley habilitadora le confiere. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 436 (1997); *Misión Ind. P.R. v. J.P. y A.A.A.,* 142 DPR 656, 672-673 (1997). En otras palabras, el conocimiento especializado de la agencia justifica que se sostengan sus determinaciones. Por lo que, en virtud de nuestro ejercicio de revisión judicial, le debemos gran deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Depto. Corrección,* 208 DPR 656, 673-674 (2022); *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021).

Dentro de este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.,* 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. A. R. Pe.,* 152 DPR 116, 122 (2000). Esto significa que este Tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS,* 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.,* 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por

la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

Ahora bien, esa presunción de legalidad no constituye un dogma inflexible que impide la revisión judicial si no existen las condiciones que sostienen la deferencia. En el caso de *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016), el Tribunal Supremo se expresó sobre el alcance de la revisión judicial y mencionó lo siguiente:

> *[L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida. Íd., en la pág. 628.*

Por ende, como norma general, el tribunal revisor le debe respeto y deferencia al dictamen administrativo. No obstante, si el foro revisor entiende que uno de estos factores está presente, podrá entonces modificar la decisión.

**B.**

La Ley Núm. 203-2007, *supra*, se aprobó para beneficio de los veteranos y veteranas de Puerto Rico y establece una compilación ordenada de todas las legislaciones aprobadas a su favor. Art. 3 de la Ley Núm. 203-2007, 29 LPRA sec. 736. En lo pertinente al caso de autos, los derechos que se conceden en beneficio del veterano relacionados con el trabajo, el Art. 4 (F)(a)(1), (F)(a)(3) y (F)(a)(5) de la Ley Núm. 203-2007, 29 LPRA sec. 737, dispone que:

[...]

*(a) El Gobierno del Estado Libre Asociado de Puerto Rico, sus agencias e instrumentalidades, corporaciones públicas o cuasi públicas, municipios y todas las personas particulares, naturales o jurídicas, que operan negocios en Puerto Rico vendrán obligadas a:*

*(1) Dar preferencia a un veterano, en igualdad de condiciones académicas, técnicas o de experiencia, en su nombramiento o concesión de ascenso para cualquier cargo, empleo u oportunidad de trabajo.*

[...]

*(3) En aquellos casos en los cuales, como parte de un proceso de empleo, un veterano hubiere tomado cualquier prueba o examen como parte de una solicitud de ingreso, de reingreso o de ascenso, y dicho veterano hubiere obtenido, en la correspondiente prueba o examen, la puntuación mínima requerida para cualificar para el ingreso, reingreso o ascenso al correspondiente cargo, se garantiza el derecho de dicho veterano a que se le sumen diez (10) puntos o el diez por ciento (10%), lo que sea mayor, a la calificación obtenida por dicho veterano en la correspondiente prueba o examen.*

[...]

*(5) Circular las convocatorias de cualquier puesto o empleo de libre competencia disponible a la Oficina del Procurador del Veterano quien lo notificará a las organizaciones de veteranos debidamente organizadas, por vía de una página electrónica de dicha Oficina accesible a través del Internet, o en su defecto, en el portal cibernético del gobierno de Puerto Rico o por cualquier otro medio que así estime pertinente.*

[...]

Por otra parte, el Art. 2 (e) de la Ley Núm. 203-2007, 29 LPRA sec. 735, define el término "Examen(es) de Oposición" como:

*[e]xamen o los exámenes que un patrono realiza a varias personas que desean un determinado puesto de trabajo dentro de una organización para determinar las capacidades de cada uno de los solicitantes para el ejercicio de las funciones para dicho puesto, incluyendo, pero sin limitarse a la administración de exámenes escritos, verbales, teóricos, prácticos, evaluaciones psicológicas, de cualificaciones, etc., entre otros.*

## C.

La Ley del Procurador del Veterano del Estado Libre Asociado de Puerto Rico, Ley Núm. 79-2013, 1 LPRA sec. 781 *et seq.*, creó la OPV como el organismo en la Rama Ejecutiva,

responsable de atender e investigar los reclamos de los veteranos de Puerto Rico y velar por sus derechos en las áreas de la educación, salud, seguridad, empleo, derechos civiles y políticos, legislación social, laboral y contributiva, vivienda, transportación, recreación y cultural. Art. 4 de la Ley Núm. 79-2013, 1 LPRA sec. 783. De igual forma, dicha oficina es el organismo que fiscaliza la implantación y cumplimiento por las agencias y entidades privadas de la política pública dispuesta en el estatuto. *Íd.*

Asimismo, dicho estatuto faculta al Procurador(a) a:

*[e]jercer todos los poderes, prerrogativas y funciones necesarias para garantizar el debido cumplimiento de las leyes y los reglamentos aprobados en la jurisdicción local que promuevan ayuda, asistencia y protección a los veteranos y sus familiares. A los fines antes indicados, el Procurador podrá atender, investigar, procesar y adjudicar querellas y podrá ordenar, además, el cumplimiento de la legislación aplicable en aquellos casos en que cualquier persona natural o jurídica, o cualquier entidad pública, niegue, entorpezca o en cualquier forma violare o perjudique el disfrute de los derechos, privilegios y beneficios concedidos a los veteranos y sus familiares, al amparo de tales leyes.* Art. 8 de la Ley Núm. 79-2013, 1 LPRA sec. 787.

Si bien es cierto que el Procurador tiene el poder de investigar y adjudicar querellas, el Art. 10 de la Ley Núm. 79-2013, *supra*, 1 LPRA sec. 789, dispone que: [e]l Procurador no investigará aquellas querellas que: a) Se refieran a algún asunto fuera del ámbito de su jurisdicción, b) Sean carentes de mérito, e) La parte promovente ha desistido voluntariamente o d) La parte promovente no tiene legitimación para instarla.

Ante el marco estatutario descrito anteriormente, la OPV aprobó el Reglamento Núm. 5259, *supra*, que tiene como propósito establecer las normas para regular la etapa de investigación y la etapa de adjudicación de querellas ante la OPV, en aras de proveer un procedimiento uniforme. Sec. 1.1 del Reglamento Núm. 5259, *supra*.

De conformidad con la Sec. 2.7 (f) del Reglamento Núm. 5259, *supra,* el Procurador no investigará aquellas querellas en que, a su juicio: "haya transcurrido un año entre la fecha en que ocurrieron los hechos y la presentación de la querella".

Por otra parte, y concerniente a la controversia en el caso de autos, el Art. 10 de la Ley Núm. 79-2013, *supra,* faculta al Procurador a imponer y cobrar multas administrativas, así como podrá imponer la compensación por los daños ocasionados, incluyendo, entre otros, daños emocionales.

De igual manera, el Tribunal Supremo ha reconocido la facultad de las agencias administrativas para imponer sanciones. En lo particular ha expresado que:

> *[L]as agencias gozan de una amplia discreción en lo referente a la imposición de sanciones, pues son éstas las que diariamente implantan la ley orgánica y los reglamentos y son las que, por su conocimiento especializado, están en mejor posición de establecer cuál es el efecto de la violación en el sector reglamentado.* Comisionado v. Prime Life, 162 DPR 334, 341 (2004).

### III.

### A.

Nos corresponde resolver si la OPV actuó correctamente o no al declarar Ha Lugar la "Querella" presentada por el Sr. Cora, así como las multas otorgadas en la "Resolución".

Comenzaremos con la discusión del recurso de revisión judicial KLRA202400564 presentado por AML. En el mismo, la parte recurrente planteó que la OPV cometió cuatro (4) errores.

En el primer error, AML adujo que la OPV incidió al no desestimar las reclamaciones del Sr. Cora, pues alegadamente estaban prescritas. AML arguyó que, las reclamaciones se basaron en hechos ocurridos en el año 2015 y la parte recurrida presentó su "Querella" el 2 de diciembre del 2019, por lo que las mismas excedieron el término prescriptivo de un año. No le asiste la razón, veamos.

La ley orgánica de la OPV, la Ley Núm. 79-2013, *supra,* no estipula término alguno dentro del cual tenga que iniciarse un proceso adjudicativo ante la agencia recurrida. Asimismo, en el Art. 10 de la Ley Núm. 79-2013, *supra,* se enumeran las instancias de cuándo el Procurador(a) no investigará querellas. Sin embargo, dicho artículo no contempla limitar la autoridad del Procurador(a) para intervenir en querellas, por el mero hecho de que haya transcurrido un determinado tiempo entre los hechos que dan lugar al reclamo de la querella y la fecha de presentación de esta. Sin embargo, en contravención con la Ley Núm. 79-2013, *supra,* según con lo dispuesto en la Sec. 2.7 (f) del Reglamento Núm. 5259, *supra,* el Procurador(a) no investigará aquellas querellas en que, a su juicio: "haya transcurrido un año entre la fecha en que ocurrieron los hechos y la presentación de la querella". Teniendo en cuenta el conflicto entre la Ley Núm. 79-2013, *supra* y el Reglamento Núm 5259, *supra,* nuestro Más Alto Foro expresó que, los tribunales no deben perder de perspectiva que, "un reglamento promulgado para implantar la ejecución de una ley puede complementarla, pero no estar en conflicto con ésta". *P.S.P. v. Comisión Estatal de Elecciones,* 110 DPR 400, 409 (1980). De lo contrario, la disposición reglamentaria tiene que ceder ante el mandato legislativo. *Díaz v. Srio. de Hacienda,* 114 DPR 850, 874 (1983).

Por lo anterior, y ante el hecho de que la Ley Núm. 79-2013, *supra,* no establece término alguno dentro del cual tenga que iniciarse un proceso adjudicativo ante la agencia recurrida, las reclamaciones no estaban prescritas.

Bajo el supuesto que para la intervención de la OPV efectivamente se hubiese requerido que el Sr. Cora acudiera a la agencia recurrida dentro del término de un (1) año a partir de la fecha de la entrevista en la posición para la cual no fue

seleccionado, la presentación por éste de una "Querella" ante el OFCCP interrumpió el término. Esto, debido a que, la "Querella" ante dicha entidad fue presentada el 3 de febrero de 2016, antes de haberse cumplido un (1) año desde la referida entrevista de trabajo,[6] lo cual tuvo el efecto de interrumpir el cómputo del referido año hasta el 28 de junio de 2017. En ésta última fecha la OFCCP archivó la "Querella" presentada por el Sr. Cora, siendo a partir de la fecha de dicho archivo que habría comenzado a transcurrir, nuevamente, el año para acudir a la OPV. Así pues, el 10 de agosto de 2017 la parte recurrida acudió a la OPV, siendo entrevistado el 11 de agosto de 2017, a partir de dicha fecha inició el procedimiento investigativo antes la OPV. Iniciada la etapa investigativa y sin haberse concluido la misma, el 2 de diciembre de 2019, el Sr. Cora presentó una "Querella" ante la OPV en la cual alegó violaciones, al Art. 4 (F)(a)(1), (F)(a)(3) y (F)(a)(5) de la Ley Núm. 203-2007, *supra*.

El Código Civil de Puerto Rico ha reconocido que "[l]a prescripción de las acciones se interrumpe por su ejercicio ante los tribunales".[7] Art. 1873 del Código Civil de Puerto Rico, 31 LPRA sec. 5303. De igual forma, nuestro Máximo Foro ha expresado que la interrupción a través del ejercicio ante los tribunales "tiene el resultado de interrumpir y congelar el término prescriptivo si la acción se presentó oportuna y eficazmente de manera que el nuevo término iniciará cuando culmine efectivamente el proceso judicial". *Durán Cepeda v. Morales Lebrón*, 112 DPR 623, 630 (1982), reiterado en *Ross Valedón v. Hosp. Dr. Susoni Health Comm., Corp.*, 2024 TSPR 10. Lo antes mencionado, sin importar que la acción se lleve a cabo ante un tribunal que carezca de jurisdicción o

---

[6] La entrevista objeto de controversia en el caso de autos fue el 26 de febrero de 2015.

[7] Código Civil vigente al momento de los hechos.

competencia, surte efecto interruptor contra la prescripción. *Durán Cepeda v. Morales Lebrón, supra*, a la pág. 627, citando a *Diez v. Green*, 32 DPR 814, (1924); L. Díez Picazo, La Prescripción en el Código Civil, Barcelona, Ed. Bosch, 1964, a las págs. 111, 122; J. Puig Brutau, Fundamentos de Derechos Civil, Barcelona, Ed. Bosch, 1979, T. 1, Vol. 1, a las págs. 898-899; M. Albaladejo, Derecho Civil, 3ra ed., Barcelona, Ed. Bosch, 1975, T. 1, Vol. 2, a la pág. 472; M. Albaladejo, Comentario al Artículo 1973 del Código Civil, Rev. de Der. Privado, 1977, a las págs. 987-994; J. L. Lacruz Berdejo, Elementos de Derecho Civil, Barcelona, Ed. Bosch, 1974, pág. 301; contra: Q. M. Scaevola, Código Civil, Madrid, Ed. Reus, 1965, T. XXXII, Vol. 2, a la pág. 959 et seq.

A base de las fechas antes mencionadas y bajo el supuesto que para la intervención de la OPV efectivamente se hubiese requerido que el Sr. Cora acudiera a la agencia recurrida dentro del término de un (1) año, a partir de la fecha de la entrevista en la posición para la cual no fue seleccionado, queda evidenciado que la parte recurrida presentó querellas ante agencias federales y estatales que tuvieron el efecto de interrumpir el supuesto término.

Como segundo error, AML sostuvo que la agencia recurrida erró al concluir que se aplicara la "preferencia" a favor del Sr. Cora, en virtud del Art. 4 (F)(a)(1) de la Ley Núm. 203-2007, *supra*. AML sostuvo que, el OE se basó exclusivamente en el resumé del Sr. Cora y que no le dio crédito a las notas que tomaron los evaluadores, el Sr. López Marrero y la Sra. Román, en el proceso de entrevista para la adjudicación del puesto de "Manager Supply Chain"; los cuales concluyeron que el Sr. Cora no estaba igualmente cualificado que la Sra. Amaro Bermúdez para el puesto en controversia.

En cuanto a esta controversia en particular, el Art. 4 (F)(a)(1) de la Ley Núm. 203-2007, *supra*, establece que:

*(a) El Gobierno del Estado Libre Asociado de Puerto Rico, sus agencias e instrumentalidades, corporaciones públicas o cuasi públicas, municipios y todas las personas particulares, naturales o jurídicas, que operan negocios en Puerto Rico vendrán obligadas a:*

*(1) Dar preferencia a un veterano, en igualdad de condiciones académicas, técnicas o de experiencia, en su nombramiento o concesión de ascenso para cualquier cargo, empleo u oportunidad de trabajo.*

Por su parte, el Tribunal Supremo ha expresado que: "[s]e ha decidido que se puede conceder una preferencia a veteranos siempre que posean los requisitos mínimos que exige el empleo". *Rubín Ramírez v. Trías Monge*, 111 DPR 486 (1981).

Así las cosas, la preferencia en el empleo que opera a favor de un(a) veterano(a) que esté cualificado para la posición a la cual aspira, por cumplir con los requisitos académicos, técnicos, o de experiencia mínimos establecidos para la misma, estando en igualdad de condiciones en relación con otros solicitantes no veteranos, es una preferencia de carácter absoluto.

Luego de evaluar la prueba oral que obra en el expediente administrativo, concluimos que la OPV no erró al aplicarle la preferencia al Sr. Cora:  Veamos.

En primer lugar, los requisitos básicos con los que los solicitantes tenían que cumplir eran los siguientes: un grado de Doctorado en Ciencias Biológicas, Ingeniería y/o Administración de Empresas, o en la alternativa, un grado de Maestría en Ciencias Biológicas, Ingeniería y/o Administración de Empresas; más de tres (3) años de experiencia de gerencia de almacén y/o en operaciones de manufactura, o en la alternativa, un grado de Bachillerato en Ciencias Biológicas, Ingeniería y/o Administración de Empresas; más de cinco (5) años de experiencia de gerencia de almacén y/o en operaciones de manufactura; experiencia general previa dirigiendo personas directamente y/o experiencia liderando

equipos, proyectos, programas o dirigiendo la asignación de recursos.

Por otro lado, los "preferred qualifications" con los que los solicitantes tenían que cumplir eran los siguientes: poseer destrezas desarrolladas en supervisión, poseer destrezas en presentación y facilitación, contar con sólidas destrezas analíticas para resolver problemas, tener destrezas sólidas en redacción técnica, poseer sólidas destrezas en gestión de proyectos, contar con destrezas en gestión del cambio, poseer habilidades de influir en el personal y lograr transformaciones fuera de su ámbito de responsabilidad, destrezas en formar y liderear equipos de distintas áreas funcionales para resolver problemas complejos, tener buenas destrezas de toma de decisiones, técnico experto para la función y poseer comprensión y aprecio de los valores y atributos de liderazgo de AML.

Según la prueba oral y la totalidad del expediente, quedó constatado que el Sr. Cora cumplía con los requisitos básicos y con los "preferred qualifications" que AML requería. La parte recurrida contaba con un Bachillerato en Ciencias Naturales con una concentración en Biología de la Universidad de Puerto Rico, una Maestría en "Management & Business Administration del Wilmington College" de Delaware, una Maestría en Negocios Internacionales y Diplomacia de "Troy State University" de Florida y estaba próximo a completar una Maestría en Contabilidad y Finanzas de la Universidad del Turabo. El Sr. Cora formó parte de la Fuerza Área de los Estados Unidos y trabajó con todo lo relacionado al "supply chain management" de la operación de los aviones en Delaware. Mientras realizaba las labores en el área de "supply chain management" ejercía funciones de nivel de supervisión, administrar presupuesto, adiestrar personal, preparar procedimientos y traducirlos, diseñar y establecer almacenes y

asistir a otros empleados en asuntos de operaciones, práctica y metodología de calidad.  El Sr. Cora, por aproximadamente tres (3) años, trabajó como ingeniero y asesor técnico del Departamento de Estados de los Estados Unidos en El Salvador.  Allí tuvo a su cargo todo lo relacionado con el "supply chain management", del desarrollo del procedimiento de introducción de nuevos procesos y productos, la validación de ingeniería, los procesos de calidad para la solución de los problemas de los equipos electrónicos y los programas de reparación.  De igual forma, durante su labor con el Departamento de Estados de los Estados Unidos tuvo la responsabilidad de dirigir el mayor programa militar extranjero en construcción en implementación en Centroamérica, incluyendo los sistemas y la transferencia de tecnología, los sistemas de calidad y los programas de confiabilidad de los equipos. Asimismo, implementó controles de inventario, programa de aseguramiento, Centro de Análisis de Fallas y Programa de Entrenamiento Técnico Supervisado en la región.

En cuanto al sector privado, el Sr. Cora laboró en Intel y en Johnson & Johnson Phamaceuticals.  En lo específico, la parte recurrida laboró tres (3) años en Johnson & Johnson Phamaceuticals, inicialmente como supervisor y posteriormente, como "Manufacturing Project Manager".  Entre las labores que el Sr. Cora impartía incluía realizar funciones en el área de "supply chain".  En cuanto al trabajo en Intel, el Sr. Cora laboró con ellos por un periodo de aproximadamente ocho (8) años.  Allí ocupó el puesto de gerente de proyectos y realizó funciones en el área de "supply chain", las cuales se encontraban el almacenamiento, la programación de piezas, el "production support" y la manufactura.

Finalmente, el Sr. Cora, como consultor, prestó servicios profesionales a compañías que daban apoyo a la industria de alimentos y a la industria farmacéutica en aspectos relativos de

"good manufacturing practices" y regulaciones del "United States Food and Drugs Administration" (FDA). Igualmente, trabajó con regulaciones federales aplicables a la Fuerza Área de los Estados Unidos y a la industria de la farmacéutica e interactuando con los reguladores federales, incluyendo funcionarios e inspectores del "Congressional Budget Office y del General Accounting Office" a cargo de asegurarse del cumplimiento de las regulaciones aplicables.

La Sra. Amaro Bermúdez, por su parte, no era veterana, pero contaba con un Bachillerato en Ciencias Naturales con una concentración de Química Industrial del Recinto de Humacao de la Universidad de Puerto Rico y tenía pendiente entregar su proyecto final para obtener su Maestría en Manufactura de Competitividad, con una concentración en productos farmacéuticos, de la Universidad Politécnica de Puerto Rico. Laboró como Química en la farmacéutica Pfizer, por dos (2) años y dos (2) meses. De igual forma, laboró aproximadamente por un (1) año y nueve (9) meses en Pharmaceutical Consulting Services como Especialista de Validación. Sus funciones en dicha posición consistieron en ejecutar planes maestros de limpieza, procesamiento y empaque, preparando protocolos, monitoreando y evaluando datos y emitiendo reportes acreditando que las actividades de validación cumplían con las políticas internas de la empresa y con las guías establecidas por la FDA. La Sra. Amaro Bermúdez laboró también como Científico de Validación con la farmacéutica Schering Plough, LLC. y como Científico de Transferencia de Productos I y II y Enlace de Transferencia y Validación de Productos de Consumo con la farmacéutica Mova Pharmaceutical, Inc. Asimismo, trabajó con la farmacéutica Bristol Myers Squibb como Científico de Procesos. Finalmente, para la fecha en que AML publicó la vacante de

Manager Supply Chain, la Sra. Amaro Bermúdez ocupaba la posición de especialista de Manufactura en AML.

Como quedó evidenciado, el Sr. Cora no solo cumplía con los requisitos básicos, sino que, también cumplía con los preferred qualifications. De hecho, se desprende de la transcripción de la vista del 1 de septiembre de 2022 que se le preguntó a la Sra. Román que si: "una vez cumpliendo con los requisitos básicos y preferidos, ustedes llamaron a entrevista a cuatro personas para esta plaza" a lo que ella respondió "correcto" y que dentro de esas personas se encontraba el Sr. Cora.[8]

Como pudimos ver, ambos candidatos contaban con experiencia y con los requisitos mínimos requeridos, es por ello que, estando en igualdad de condiciones, actuó correctamente la OPV al otorgarle la "preferencia" al Sr. Cora.

En cuanto al tercer error, la AML adujo que, la OPV incidió al imponer multas en su contra por alegadas violaciones al Art. 4 (F)(a)(1) y (F)(a)(5) de la Ley Núm. 203-2007, *supra*, toda vez que carecía de autoridad legal para hacerlo. Específicamente, adujo que, la OPV no tenía autoridad para imponer multas administrativas en virtud de la Ley Núm. 203-2007, *supra*, por las reclamaciones del Sr. Cora de preferencia y por no haber enviado las publicaciones de posiciones disponibles a la agencia recurrida. Esto, debido a que, alegadamente los eventos que dieron base a las multas ocurrieron entre el 27 de enero de 2015 y el 2 de febrero de 2016, y que para esa fecha la OPV no tenía autoridad en ley para imponer multas. Todo este planteamiento de AML estaba basado en el argumento de que, la enmienda a la Ley Núm. 203-2007, *supra*, por virtud de la Ley para enmendar el Art. 3, los apartados (a) y (c) al inciso B del Art. 4 y el Art. 9 de Ley Núm. 203-2007,

---

[8] Véase, transcripción de la vista del 1 de septiembre de 2022, testimonio de la Sra. Román, pág. 137-138.

según enmendada, conocida como "Carta de Derechos del Veterano Puertorriqueño del Siglo XXI", Ley Núm. 21-2018, era de fecha posterior a las aludidas violaciones y que las mismas debían ser eliminadas. No le asiste la razón.

En primer lugar, la Ley 21-2018, *supra*, la cual enmendó el Art. 9 de la Ley Núm. 203-2007, 29 LPRA sec. 742, no es de aplicación al presente caso. Esto, debido a que, la Ley 21-2018, *supra*, la cual enmendó el Art. 9 de la Ley Núm. 203-2007, *supra*, se refería a agencias del Gobierno de Puerto Rico, sus instrumentalidades y municipios, a notificar convocatorias que surjan. AML no es una agencia de gobierno, instrumentalidad ni municipio. Al contrario, la parte recurrente es una entidad privada, persona jurídica que opera negocios en Puerto Rico y conforme al Art. 4 (F)(a)(5) de la Ley Núm. 203-2007, *supra*, venía obligada a notificarle a la OPV las 49 convocatorias no circuladas y aplicarle la "preferencia" al Sr. Cora.

En segundo lugar, surge de la "Resolución" que, el OE fundamentó su recomendación de imposición de multas a AML por incumplir su obligación de notificar a la OPV las convocatorias de empleo disponibles en dos disposiciones legales aplicables. La primera fue el Art. 4 (F)(a)(5) de la Ley Núm. 203-2007, *supra*, la cual dispone que:

[...]

*(a) El Gobierno del Estado Libre Asociado de Puerto Rico, sus agencias e instrumentalidades, corporaciones públicas o cuasi públicas, municipios y todas las personas particulares, naturales o jurídicas, que operan negocios en Puerto Rico vendrán obligadas a:*

[...]

*(5) Circular las convocatorias de cualquier puesto o empleo de libre competencia disponible a la Oficina del Procurador del Veterano quien lo notificará a las organizaciones de veteranos debidamente organizadas, por vía de una página electrónica de dicha Oficina accesible a través del Internet, o en su defecto, en el portal cibernético*

> *del gobierno de Puerto Rico o por cualquier otro*
> *medio que así estime pertinente.*
>
> [...]

Mientras que, la segunda fue basada en la Ley Núm. 79-2013, *supra*, la cual creó la OPV y le delegó la autoridad para fiscalizar la implantación y cumplimiento por las agencias y entidades privadas de la política pública dispuesta en la Ley Núm. 203-2007, *supra*. Véase, Art. 4 de la Ley Núm. 79-2013, *supra*.

El Art. 4 de la Ley Núm. 203-2007, *supra*, claramente estaba vigente cuando la parte recurrente incumplió su obligación para notificar las convocatorias de empleo que habían surgido entre el 27 de enero de 2015 y el 2 de febrero de 2016 y aplicar la "preferencia". Surge de las estipulaciones de hechos que AML no le notificó a la OPV las convocatorias de las 49 posiciones de empleo de libre competencia que ésta tenía disponible en Puerto Rico y Estado Unidos. Por lo tanto, al no circular dichas convocatorias, AML incumplió su obligación conforme al Art. 4 (F)(a)(5) de la Ley Núm. 203-2007, *supra*. Por consiguiente, al AML no cumplir con la disposición, la OPV estaba facultada por virtud de la Ley Núm. 79-2013, *supra*, a imponer las multas. Pues, el Art. 10 de la Ley Núm. 79-2013, *supra*, expresamente faculta al Procurador a imponer y cobrar multas administrativas. Por lo antes expuesto, quedó constatado que la OPV actuó dentro del marco de la Ley Núm. 203-2007, *supra* y la Ley Núm. 79-2013, *supra*, al imponerle a AML las multas.

De igual manera, el Tribunal Supremo ha reconocido la facultad de las agencias administrativas para imponer sanciones. En lo particula,r ha expresado que:

> *[L]as agencias gozan de una amplia discreción en lo*
> *referente a la imposición de sanciones, pues son éstas*
> *las que diariamente implantan la ley orgánica y los*
> *reglamentos y son las que, por su conocimiento*
> *especializado, están en mejor posición de establecer cuál*
> *es el efecto de la violación en el sector*

*reglamentado. Comisionado v. Prime Life, supra,* a la pág. 341.

Establecido lo anterior, es menester enfatizar que, en la "Resolución" la agencia recurrida cometió un error de cálculo. Esto, debido a que, según la OPV adjudicó una multa de $5,000.00 a AML por no aplicarle la "preferencia" al Sr. Cora y una multa de quinientos dólares $500.00 por cada una de las 49 ocasiones que no notificaron las posiciones de empleo de libre competencia que AML tenía disponible en Puerto Rico y en Estado Unidos, para un total de $24,500.00. Según la agencia recurrida, el total de las mencionadas multas eran de $34,000.00. Sin embargo, el total correcto es de $29,500.00. Por esta razón, nos corresponde modificar la cuantía concedida por la agencia recurrida.

Como cuarto y último error, la AML arguyó que la agencia recurrida erró al concluir que las entrevistas de empleo son "pruebas y exámenes" al amparo del Art. 4 (F)(a)(3) de la Ley Núm. 203-2007, *supra.* En síntesis, sostuvo que no existía base jurídica para la posición de la OPV de que una entrevista podía constituir una prueba o examen.

Pertinente a la controversia, el Art 4 (F)(a)(3) de la Ley Núm. 203-217, *supra,* dispone que:

[…]

*(a)      El Gobierno del Estado Libre Asociado de Puerto Rico, sus agencias e instrumentalidades, corporaciones públicas o cuasi públicas, municipios y todas las personas particulares, naturales o jurídicas, que operan negocios en Puerto Rico vendrán obligadas a:*

[…]

*(3) En aquellos casos en los cuales, como parte de un proceso de empleo, un veterano hubiere tomado cualquier prueba o examen como parte de una solicitud de ingreso, de reingreso o de ascenso, y dicho veterano hubiere obtenido, en la correspondiente prueba o examen, la puntuación mínima requerida para cualificar para el ingreso, reingreso o ascenso al correspondiente cargo, se garantiza el derecho de dicho veterano a que se le sumen diez (10) puntos o el diez por ciento (10%), lo*

> *que sea mayor, a la calificación obtenida por dicho*
> *veterano en la correspondiente prueba o examen.*

[...]

Ahora bien, aunque ciertamente la Ley Núm. 203-2007, *supra*, no define los términos de "prueba" o "examen", el estatuto sí recoge la definición del término "Examen(es) de Oposición". El Art. 2 (e) de la Ley Núm. 203-2007, *supra*, lo define como:

> *[e]xamen o los exámenes que un patrono realiza a varias personas que desean un determinado puesto de trabajo dentro de una organización para determinar las capacidades de cada uno de los solicitantes para el ejercicio de las funciones para dicho puesto, incluyendo, pero sin limitarse a la administración de exámenes escritos, verbales, teóricos, prácticos, evaluaciones psicológicas, de cualificaciones, etc., entre otros.*

Sin duda, una entrevista que forma parte de un proceso de selección de un candidato a empleo, constituye una "prueba" o "examen" al cual el potencial patrono está sometiendo al candidato, para evaluar sus aptitudes para la posición y forma parte del proceso decisional a ser utilizado. De hecho, uno de los argumentos principales de AML para justificar la selección de la Sra. Amaro Bermúdez, fue una entrevista alegadamente superior comparada a la del Sr. Cora. La parte recurrente tomó la decisión de someter al Sr. Cora, y a otros candidatos bajo su consideración, a una entrevista. Asimismo, les adjudicó unos criterios de calificación en sus distintos renglones para comparar a los candidatos, los cuales se dividían en: Excellent, Good, Average, Poor y Absent. De los testimonios del Sr. López Marrero y la Sra. Román surgió que, utilizaron en la entrevista del Sr. Cora un sistema de puntos, métricas y orden de calificación y evaluación numérica. Lo antes descrito demuestra que, en efecto, la entrevista en este caso era un examen, evaluación o prueba. Por lo tanto, la OPV no erró al determinar que una entrevista constituía un examen o una prueba.

**B.**

En el recurso de revisión judicial presentado por el Sr. Cora, KLRA202400585, éste planteó que la OPV erró al no concederle partida alguna por los daños reclamados, a pesar de haberse adjudicado la "Querella" a su favor y estando la agencia facultada por disposición de ley para hacerlo. Además, el Sr. Cora argumentó que, la OPV tenía la obligación de imponer daños a su favor toda vez que, la manera correcta del Procurador cumplir con sus obligaciones de velar por los mejores intereses del Sr. Cora y su familia era concediéndole una partida por los daños causados por la violación a la Ley Núm. 79-2013, *supra*. Finalmente, el Sr. Cora solicitó que se devuelva el caso de autos a la OPV para que dicho foro adjudique los daños y perjuicios reclamados en la "Querella" y cualquier otro pronunciamiento que en derecho proceda.

Por su parte, la AML alegó que, la OPV no tenía autoridad para imponer daños a favor de una parte por alegadas violaciones a la Ley Núm. 79-2013, *supra*, y que el Sr. Cora no desfiló prueba alguna durante la vista adjudicativa del 1 de septiembre de 2022, en cuanto a sus alegados daños y que tampoco proveyó evidencia durante el descubrimiento de prueba.

Pertinente a la controversia, el Art. 10 de la Ley Núm. 79-2013, *supra*, faculta al Procurador a imponer la compensación por los daños ocasionados, incluyendo, entre otros, daños emocionales.

Si bien el Procurador estaba facultado para imponer daños emocionales, en la "Resolución" emitida por la OPV, no se realizó compensación alguna a favor del Sr. Cora. Inclusive, en la determinación de la agencia recurrida no hubo expresiones con relación a la reclamación de compensación por daños sufridos y daños emocionales para el Sr. Cora y su familia.

Como mencionamos en la exposición del derecho, en el caso de *Torres Rivera v. Policía de PR, supra,* el Tribunal Supremo se expresó sobre el alcance de la revisión judicial y mencionó lo siguiente:

> *[L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida. Íd.,* en la pág. 628.

Por ende, como norma general, el tribunal revisor le debe respeto y deferencia al dictamen administrativo. No obstante, si el foro revisor entiende que uno de estos factores está presente, podrá entonces modificar la decisión. Somos de la opinión de que, ninguno de los factores antes mencionados están presentes en el caso de autos para poner a este foro intermedio apelativo en posición de modificar el dictamen recurrido.

En primer lugar, el Procurador no está obligado a adjudicar partidas por daños, el estatuto lo habilita para dicha facultad, pero finalmente es un asunto discrecional que evaluará al momento de tomar la determinación final. Recordemos que, el Procurador es el que tiene la prueba ante sí y es la persona idónea para decidir si otorga o no los daños. En esta ocasión, una vez evaluado todo el expediente administrativo y llevada a cabo la vista administrativa del 1 de septiembre de 2022, el Procurador no concedió partida alguna por los daños reclamados. Por lo tanto, este foro intermedio apelativo le debe deferencia al dictamen administrativo emitido por la OPV.

**IV.**

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, se modifica la "Resolución" emitida por la Oficina del Procurador de Veteranos a los únicos efectos de que el monto total correcto en multas es de $29,500.00, así modificada, se confirma.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones